UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TIMOTHY WALLIN, 912 Roanoke Drive, Springfield, IL 62702, On behalf of Himself and All Others Similarly Situated, | Civil No. |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| vs. NATIONAL ASSOCIATION OF SECURITIES DEALERS, 1735 K Street NW, Washington, DC 20006 | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

## PETITION FOR DAMAGES

Plaintiff, by and through his attorneys, brings this action on behalf of himself and all others similarly situated, and hereby alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this matter is a class action in which one or more of the class members are citizens of a state different from Defendant.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Defendant National Association of Securities Dealers (the "NASD") resides and is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in and were directed from this District.

## PARTIES

3. Plaintiff, Timothy Wallin, a person of full age and majority, is a resident of Illinois and took the Series 7 exam administered by the NASD on November 22, 2004. Plaintiff brings this action on behalf of himself and a Class of similarly situated persons throughout the United States.

4. Defendant the NASD is a private-sector, not-for-profit regulator of America's securities industry headquartered in Washington D.C. It oversees the activities of more than 5,100 brokerage firms, 106,850 branch offices and more than 655,830 registered securities representatives. Under federal law, virtually every securities firm conducting business with the United States public is a member of the NASD. The NASD licenses individuals and admits firms to the industry, writes rules to govern the behavior of individuals and firms, and examines them for regulatory compliance, while disciplining those who fail to comply. In addition, the NASD provides education and qualification examinations, including the Series 7 examination, to industry professionals.

- 2 -

## FACTUAL ALLEGATIONS

5.  Any person associated with a securities firm that is a member of the NASD, who is engaged in the securities business of the firm – including partners, officers, directors, branch managers, department supervisors, and salespersons – must register with the NASD. In order to do business with the public and as part of the registration process, securities professionals must pass an examination (the "Series 7 Exam") developed by the New York Stock Exchange ("NYSE") and administered by the NASD to demonstrate competence in the areas in which they will work. This mandatory qualification examination covers a broad range of subjects on the markets, as well as the securities industry and its regulatory structure, ensuring a minimum level of understanding and expertise.

6.  The Series 7 Exam qualifies a candidate for the solicitation, purchase, and/or sale of all securities products, including corporate securities, municipal securities, options, direct participation programs, investment company products and variable contracts. The Series 7 Exam contains 250 multiple-choice questions and is administered in two three-hour parts of 125 questions each. The passing score for the Series 7 Exam is 70 percent.

7.  Between October 1, 2004 and December 20, 2005, approximately 60,500 individuals, including Plaintiff, took the Series 7 Exam. The results of this Series 7 Exam – whether pass or fail – were forwarded to member securities firms and the Central Registration Depository ("CRD") registered representative database.

8.  According to the NASD, a recently discovered software error in the grading mechanism for the Series 7 Exam caused 1,882 individuals who took the Series 7 Exam between October 1, 2004 and December 20, 2005, to incorrectly receive a failing score. These individuals should have received a passing score.

9. The grading error related to 213 questions that were introduced to the pool of possible questions beginning in October 2004. Because of the unique qualities of the Series 7 Exam, a computer model is used to account for the differences in test difficulty and to weigh questions appropriately. The error occurred in the weighing process in exams including one or more of these 213 questions.

10. The error was caused when the NASD's agent, EDS, which developed the software used to appropriately weigh the questions, entered a coding error into the software, resulting in improper scoring. This coding error was discovered in October 2005, and led to an investigation by the NASD to find the individuals who were affected.

11. On or about January 6, 2006, the NASD issued a press release stating that of the 1,882 individuals receiving an incorrect failing score, roughly 1,000 have already re-taken the Series 7 Exam and passed; more than 600 have not yet rescheduled a Series 7 Exam date; and just over 200 individuals are scheduled to re-take the Series 7 Exam.

12. In the January 6, 2006 press release, Robert R. Glauber, Chairman and Chief Executive Officer of the NASD apologized for the "problems this caused for the individuals and firms affected." Glauber also stated that the NASD was "putting in place enhanced quality control measures designed to prevent a future reoccurrence."

13. Upon information and belief, in late January 2006, the NASD also notified 1,882 individuals, including Plaintiff, that they had incorrectly received a failing score on the Series 7 Exam. The NASD also informed firms who sponsored the affected examinees of the error.

14. On January 23, 2006, Plaintiff Timothy Wallin, received a form letter from the NASD informing him that the "NASD has determined that a software error introduced into the automated scoring mechanism for the Series 7 exam affected a limited subset of individuals who sat for the

exam between October 2004 and December 2005 . . . . Your examination result was among those affected, and you should have received a passing score."

15. In the form letter to the affected Class Members, the NASD only offered to reimburse the affected individuals for the cost of re-testing, including outside training courses and materials, and for travel expenses directly related to the re-taking examination. The letter reads, in pertinent part:

> We understand that you may have incurred certain out-of-pocket expenses as a result of the software grading error. We will defray expenses that you directly incurred in re-taking the Series 7 examination. Specifically, we will reimburse you for the demonstratable costs or re-testing, including outside training courses and materials, and for travel expenses directly related to re-taking the examination. If you would like to request reimbursement, please go to our website and submit the expense reimbursement for to NASD with copies of your receipts, processed checks, or credit card statements.

16. Plaintiff Timothy Wallin was administered the Series 7 Exam on November 22, 2004, and was notified that day of his failing score.

17. As a result of receiving a failing score, Plaintiff suffered humiliation, embarrassment and financial loss. He was forced to take two weeks of vacation time from his employment at GCG Financial to study and re-take the Series 7 Exam. He was again administered the Series 7 Exam on December 29, 2004, and was informed that day of his passing score.

18. Other examinees have been similarly impacted by the software error. The Dow Jones Newswires reported that the mistake may have been costly to some individuals "since they can't book fees and commissions from customers without a Series 7 license. Many securities firms fire employees in training programs who fail the exam." The Bloomberg News similarly reported and added that the NASD may face lawsuits from people who lost their jobs or were denied promotions because they failed the Series 7 Exam.

19. Other than the limited expenses listed hereinabove, the NASD is not offering to compensate the affected class members for their damages, including emotional distress,

inconvenience and monetary losses, such as loss of employment, wages and/or loss of employment potential due to the incorrect Series 7 Exam results.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this class action individually and on behalf of all members of the following class (the "Class") pursuant to Federal Rules of Civil Procedure Rule 23:

> All persons who took the Series 7 examination administered by NASD during the period between October 1, 2004 to December 20, 2005, who received a failing score due to a scoring error.

21. The Class is numerous and joinder of all members is impracticable. The NASD acknowledges that 1,882 persons passed the test, but were falsely told that they had failed, making this a class action with 1,882 potential Class members. The identities of the members of the Class are currently unknown to Plaintiff, but are known to the NASD and can be easily ascertained.

22. There are questions of law and fact common to the Class. The most significant questions common to the Class, which predominate over all other issues present in this case, are:

    (a) Whether the NASD provided Plaintiff and Class members with erroneous failing test scores;

    (b) Whether the NASD incorrectly reported Plaintiff's and Class members' scores to securities firms and the CRD registered representative database;

    (c) What was the nature and extent of the NASD's scoring error and reporting of erroneous information in the Series 7 Exam;

    (d) What audit procedures were in place to detect incorrect scoring;

    (e) Why the auditing procedures failed to timely detect the incorrect scoring prior to reporting;

    (f) Whether the NASD breached contracts with Plaintiff and Class members;

    (g) Whether the contract between the NASD and Plaintiff and Class members is a contract of adhesion;

(h) Whether the NASD informed Plaintiff and Class members of the scoring error in a timely fashion;

(i) What measures the NASD undertook to determine and identify all those whose scores were impacted by the scoring error;

(j) Whether the NASD has identified all putative Class members;

(k) Whether the steps taken to remedy the scoring error were appropriate and thorough; and

(l) Whether the NASD is legally liable for damages to Plaintiff and Class members.

23. The questions of law and fact common to the Class predominate over any questions that may affect only individual members.

24. The claims of Plaintiff are typical of the claims of all other Class members because Plaintiff took the Series 7 Exam, was falsely told that he failed the exam when in actuality he had passed it, and was injured by Defendants' conduct. Thus, Plaintiff's claims are based upon the same set of facts, and assert the same legal theories to recover damages.

25. Plaintiff will fairly and adequately protect the interests of the Class. There are no disabling conflicts of interest between Plaintiff and the Class. Plaintiff is a member of the Class, possesses the same interests, and suffered the same injuries as the Class members, making his interests coextensive with those of all other Class members.

26. Plaintiff has retained competent counsel who is experienced in complex federal and state class action claims such as those asserted in this case. Plaintiff intends to prosecute this action vigorously for the benefit of the Class and the interests of the Class will be fairly and adequately protected by Plaintiff and counsel.

27.  A class action is superior to other methods for fair and efficient adjudication of the controversy for reasons that include the following:

(a)  The prosecution of separate actions by individual members of the Class creates a risk of inconsistent and varying adjudications with respect to members of the Class that would establish incompatible standards of conduct for Defendant;

(b)  Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and prosecution as a class action will eliminate the possibility of duplicative litigation; and

(c)  A class action will provide redress for claims which otherwise may be too small to support the expense of individual, complex litigation.

28.  Plaintiffs know of no difficulties that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### Breach of Contract

29.  The foregoing paragraphs are incorporated as if fully set forth herein.

30.  By submitting applications and fees to the NASD in connection with taking the Series 7 Exam, Plaintiff and Class members entered into contracts with the NASD.

31.  The contracts contained express or implied provisions that the NASD would provide test takers, securities firms and the CRD registered representative database with their correct scores.

32.  The NASD breached its contract when it incorrectly reported failing scores for 1,882 individuals who were administered the Series 7 Exam between October 1, 2004, and December 20, 2005.

33.  As a result of the NASD's breach, Plaintiff and Class members suffered damages as described herein.

34.     The damages suffered by Plaintiff and Class members were the natural and foreseeable consequences of the NASD's conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment in favor of Plaintiff and all other Class members and against Defendant the NASD, and award the following relief:

(a)     An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

(b)     Actual damages for injuries suffered by Plaintiff and the Class;

(c)     Award prejudgment and post-judgment interest on all damages as allowed by law;

(d)     Award attorneys' fees, expert fees and all costs and expenses incurred in the prosecution of this action as allowed by law; and

(e)     Grant such additional or different relief as the interests of justice, law or equity may require.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury.

DATED: March 3, 2006

LERACH COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
NANCY M. JUDA (D.C. BAR NO. 445487)

*/s/ Nancy M. Juda*
NANCY M. JUDA

1100 Connecticut Avenue, N.W.
Suite 730
Washington, DD  20036
Telephone: 202/822-6762
202/828-8428 (fax)

- 9 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)


KAHN GAUTHIER SWICK, LLC
LEWIS S. KAHN
MICHAEL SWICK
ERIC J. O'BELL, OF COUNSEL
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: 504/455-1400
504/455-1498 (fax)

*Attorneys for Plaintiff*

- 9 -