**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION | MDL No. 1772 |

**NASD'S RESPONSE TO MOTION TO TRANSFER
AND MOTION TO TRANSFER ADDITIONAL ACTION
FOR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407, the National Association of Securities Dealers, Inc.

("NASD"), hereby moves this Panel to transfer six interrelated actions, currently pending in

three different federal district courts, for coordinated pretrial proceedings in the United States

District Court for the Southern District of New York.[1]  Five of these actions are already the

subject of a motion to transfer by plaintiffs Andrew Crabbe and Linda Cutler, docketed February

28, 2006.  The grounds in support of NASD's motion are set forth in the accompanying

memorandum.

---

[1]  Pursuant to Panel Rule 7.2(a), a list of actions that NASD seeks to transfer is attached to this Motion as "Schedule 1."  NASD also intends to designate any later filed federal actions not listed in Schedule 1 as potential "tag-along actions" pursuant to Panel Rules 7.4 and 7.5.

Dated:  March 13, 2006                    Respectfully submitted,

                                          _____

OF COUNSEL:                               F. Joseph Warin
John J. Flood                             William M. Jay
NATIONAL ASSOCIATION OF                   GIBSON, DUNN & CRUTCHER, LLP
SECURITIES DEALERS, INC.                  1050 Connecticut Avenue, N.W.
1735 K Street, N.W.                       Washington, D.C.  20036
Washington, D.C.  20036                   Telephone: (202) 955-8500
                                          Fax: (202) 467-0539

                                          *Attorneys for Defendant*
                                          *National Association of*
                                          *Securities Dealers, Inc.*

<u>**Schedule 1**</u>

**SCHEDULE OF ACTIONS AFFECTED BY MOTION TO TRANSFER ACTIONS FOR
COORDINATED PRETRIAL PROCEEDINGS**

Pursuant to Rule 7.2(a)(ii) of this Panel's Rules of Procedure, NASD provides the

following information on the actions that will be affected by this Motion:

| <u>Complete Case Name</u> | <u>District Where Pending</u> | <u>Civil Action No.</u> | <u>Judge Assigned</u> |
|---|---|---|---|
| Jason Plunkett v. National Association of Security Dealers* | M.D. Tenn. | 3:06-CV-89 | Hon. Thomas A. Wiseman, Jr. |
| Andrew Crabbe, on behalf of himself and all others similarly situated, v. National Association of Securities Dealers, Inc.* | S.D.N.Y. | 1:06-CV-1085 | Hon. Deborah A. Batts |
| William Lowe, on behalf of himself and all others similarly situated, v. National Association of Securities Dealers and EDS Corporation* | D.D.C. | 1:06-CV-280 | Hon. Reggie B. Walton |
| Linda Cutler, on behalf of herself and all others similarly situated, v. National Association of Securities Dealers, Inc.* | S.D.N.Y. | 1:06-CV-1208 | Hon. Deborah A. Batts |
| Jennifer Hester, on behalf of herself and all others similarly situated, v. National Association of Securities Dealers, Inc.* | S.D.N.Y. | 1:06-CV-1238 | Hon. Deborah A. Batts |
| Timothy Wallin, on behalf of himself and all others similarly situated, v. National Association of Securities Dealers | D.D.C. | 1:06-CV-382 | Hon. Emmet G. Sullivan |

---

\* Also listed in Crabbe and Cutler's motion to transfer.

**BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION | MDL No. 1772 |

**MEMORANDUM IN RESPONSE TO MOTION TO TRANSFER
AND IN SUPPORT OF MOTION TO TRANSFER ADDITIONAL ACTION**

The National Association of Securities Dealers, Inc. (NASD), faces six pending putative class actions in three different federal district courts. Each of these actions seeks certification of the same plaintiff class and arises from the identical software error. The plaintiffs in two such actions, Andrew Crabbe and Linda Cutler, have therefore moved, pursuant to 28 U.S.C. § 1407, to consolidate their cases and three others for pretrial proceedings before a single judge in the U.S. District Court for the Southern District of New York, where three of the lawsuits have been filed, where a large percentage of the potential class likely resides, and where the securities industry is centered. In this memorandum and the accompanying motion, NASD agrees that all actions relating to the software error should be consolidated in order to promote the just and efficient conduct of the litigation; concurs with Crabbe and Cutler's suggestion of the Southern District of New York as the most appropriate venue; and seeks to transfer an additional action

not listed in the pending motion.  Accordingly, NASD requests that the Panel consolidate and transfer these six actions.

## I.    Background

NASD administers the Series 7 examination, a qualifying test required for anyone employed by a securities firm that wishes to register individuals as general securities representatives dealing with the public.  On January 6, 2006, an NASD press release stated that 1,882 individuals—out of the approximately 60,500 who took the exam between October 1, 2004, and December 20, 2005—had incorrectly received a failing grade because of a software error.  *See* NASD Says Software Error Impacts Certain Series 7 Exam Results (Jan. 6, 2006), http://www.nasd.com/web/idcplg?IdcService=SS_GET_PAGE&ssDocName=NASDW_ 015832.[1]  Over 1,000 of the 1,882 had since re-taken and passed the exam.  *Id.*

The Series 7 exam consists of 250 questions selected from a database containing questions of varying difficulty, and as a result, each exam is unique.  A computer model accounts for differences in test difficulty and weights questions appropriately.  The model also makes a minor statistical adjustment to the 70 percent passing score, based on the overall difficulty of individual exams.  Out of the large number of questions in the regularly updated database, only 213 questions were affected by the error; accordingly, tests that did not include those 213 questions were unaffected by the software error.  *Id.*

Beginning in February 2006, six plaintiffs filed separate actions against NASD:  three in the Southern District of New York, two in the District of Columbia, and one in the Middle District of Tennessee.  Each of these lawsuits revolves around the same underlying facts.

---

[1]  The press release appears as Exhibit D to Crabbe and Cutler's transfer motion.

2

According to the complaints, each of the plaintiffs took the Series 7 examination and was

erroneously informed that he or she had received a failing score.[2]  Each of the six plaintiffs

asserts that he or she suffered financial losses as a result of the erroneous reports,[3] and four state

that they lost their employment with securities firms when their employers learned of their

failing scores.[4]  Furthermore, each of the lawsuits seeks to certify an identical class of plaintiffs:

all individuals who took the Series 7 exam between October 1, 2004, and December 20, 2005,

and were incorrectly notified that they had failed.[5]

The causes of action asserted in the suits substantially overlap, as does the relief

requested.  The six complaints share much common ground: five assert breach-of-contract

counts,[6] four assert counts of negligence or gross negligence,[7] three assert defamation claims,[8]

---

[2]  *See* Wallin Compl. ¶¶ 13, 16 (attached as Exhibit A); Plunkett Compl. ¶¶ 15–16; Crabbe Compl. ¶ 23; Lowe Compl. ¶¶ 28–30; Cutler Compl. ¶ 23; Hester Compl. ¶¶ 25–26.  The complaints in *Crabbe*, *Cutler*, and *Plunkett* are attached as Exhibits A, B, and C to Crabbe and Cutler's transfer motion.  The complaints in *Lowe* and *Hester* are attached as exhibits to Crabbe and Cutler's amended transfer motion dated March 9, 2006.

[3]  *See* Plunkett Compl. ¶¶ 18–19; Crabbe Compl. ¶ 23; Lowe Compl. ¶ 30; Cutler Compl. ¶ 23; Hester Compl. ¶ 27; Wallin Compl. ¶ 17.

[4]  *See* Plunkett Compl. ¶¶ 18–19; Lowe Compl. ¶ 30; Cutler Compl. ¶ 23; Hester Compl. ¶ 27.

[5]  *See* Plunkett Compl. ¶¶ 1, 6; Crabbe Compl. ¶¶ 7, 26; Lowe Compl. ¶¶ 1, 10, 25–26; Cutler Compl. ¶¶ 7, 26; Hester Compl. ¶¶ 7, 30–31; Wallin Compl. ¶¶ 20–21.

[6]  *See* Crabbe Compl. ¶¶ 29–32; Lowe Compl. ¶¶ 34–45; Cutler Compl. ¶¶ 29–32; Hester Compl. ¶¶ 39–42; Wallin Compl. ¶¶ 29–34.

[7]  *See* Plunkett Compl. ¶¶ 29–32 (negligence); Crabbe Compl. ¶¶ 33–37 (gross negligence); Lowe Compl. ¶¶ 46–50 (negligence); Cutler Compl. ¶¶ 33–37 (gross negligence).  *See also* Plunkett Compl. ¶¶ 33–35 (negligent infliction of emotional distress); Lowe Compl. ¶¶ 51–62 (negligent misrepresentation).

[8]  *See* Plunkett Compl. ¶¶ 36–38; Crabbe Compl. ¶¶ 43–47; Cutler Compl. ¶¶ 43–47.

and three assert claims of interference with business or contractual relationships.[9]  And all six suits request similar remedies: consequential damages based on lost wages or other compensation (such as commissions, bonuses, and benefits), attorneys' fees, and costs.[10]

The first five lawsuits were filed within a span of two weeks, with four of them filed in a three-day period.  Jason Plunkett, currently a Tennessee resident who took the examination in Georgia, filed first on February 3, 2006, choosing the Middle District of Tennessee.  Plunkett Compl. ¶¶ 2, 15.  The next four lawsuits were filed in quick succession.  On February 14, Andrew Crabbe, a resident of New York who took the exam in that state, filed a four-count complaint in the Southern District of New York.  Crabbe Compl. ¶¶ 13, 23.  On February 15, William Lowe, currently a resident of Virginia who took the exam in California, filed a five-count complaint in the District of Columbia.  Lowe Compl. ¶¶ 7, 28.  Lowe also named as a defendant EDS Corporation, a Texas-based information-technology firm.  *Id.* ¶ 9.  On February 16, Linda Cutler, a New York resident who took the exam there, filed a four-count complaint in the Southern District of New York.  Cutler Compl. ¶¶ 13, 23.  Filed by the same counsel as Crabbe's, Cutler's complaint asserts the same causes of action as Crabbe and requests the same relief.  That same day, Jennifer Hester, currently a resident of Kansas, filed suit in the Southern District of New York.  Hester Compl. ¶¶ 13, 25.  Finally, on March 3, Timothy Wallin, an Illinois resident, filed his complaint in the District of Columbia.  Wallin Compl. ¶¶ 3, 7.

---

[9]  *See* Crabbe Compl. ¶¶ 38–42; Lowe Compl. ¶¶ 63–68; Cutler Compl. ¶¶ 38–42.

[10]  *See* Plunkett Compl. ¶¶ 19–22, 39; Crabbe Compl. ¶¶ 23–24, A–E; Lowe Compl. ¶¶ 30, A–H; Cutler Compl. ¶¶ 21, 23, A–E; Hester Compl. ¶¶ 29, A–E; Wallin Compl. ¶¶ 17, 19, A–E.  Additionally, two of the plaintiffs seek punitive damages.  *See* Plunkett Compl. ¶ 39(4); Lowe Compl. ¶ E.

None of the district courts has commenced discovery or otherwise yet expended more than incidental resources on the cases.  The Southern District of New York has stayed all proceedings in the *Crabbe*, *Cutler*, and *Hester* actions until this Panel determines whether to consolidate and transfer all of the cases.  *See* Exh. B (order staying cases).

NASD's Testing and Continuing Education Division is located in NASD's Rockville, Maryland, office.  NASD has its headquarters in Washington, D.C., and also has an office in New York City.  EDS's headquarters is in Plano, Texas.

NASD's counsel, Gibson, Dunn & Crutcher LLP, has offices in both New York and Washington, D.C.  Each of the plaintiffs is represented by counsel located in the district where his or her action is pending; counsel located in Philadelphia and New Orleans also appear on individual complaints.  No attorney for EDS has appeared in the *Lowe* action.  No counsel for any party except Mr. Plunkett appears to have offices in Nashville.

## II.    Consolidation and Transfer Are Warranted Under 28 U.S.C. § 1407.

Civil actions pending in different districts and involving "one or more common questions of fact" may be "transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a).  Such a transfer is appropriate in this case because consolidation will serve "the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions."  *Id.*

### A.    The Pending Actions Are Substantially Identical and Should Be Consolidated.

The pending actions all share common questions of fact.  Given that "Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite for transfer," *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004), these

commonalities are more than sufficient to show the necessity of consolidating and transferring these actions to a single forum.

First, all of the complaints focus on the same software error, and the circumstances under which it occurred will be relevant to all of the claims. *See In re America Online, Inc., Version 6.0 Software Litig.*, 162 F. Supp. 2d 690, 691 (J.P.M.L. 2001) (consolidating class actions that all alleged that a software upgrade contained errors impairing system performance); *accord In re UnumProvident Corp. Secs., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003) (consolidating four class actions because "all actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses" and "the core factual allegations" were consistent among the actions); *In re AOL Time Warner Inc. Secs. Litig.*, 235 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (consolidating where "[a]ll actions share[d] factual questions arising out of alleged misrepresentations or omissions"). As an example, all four of the complaints pleading negligence allege that a software error caused the incorrect scoring and that NASD failed to exercise reasonable care in its scoring; no matter what body of substantive law ultimately applies to these negligence claims, the underlying conduct on which each relies is the same. *See* Plunkett Compl. ¶¶ 24, 29–32; Crabbe Compl. ¶ 35; Lowe Compl. ¶¶ 46–50; Cutler Compl. ¶ 35. Similarly, the plaintiffs will have to rely on overlapping facts in their effort to demonstrate that NASD's publication of the incorrect examination scores amounts to defamation. *See* Plunkett Compl. ¶¶ 37–38; Crabbe Compl. ¶¶ 43–47; Cutler Compl. ¶¶ 44–45.

Second, all candidates taking the Series 7 examination are sponsored by securities firms, which follow substantially identical registration procedures—each candidate, for example, signs the same Form U4, *see* http://www.nasd.com/web/groups/reg_systems/documents/ regulatory_systems/nasdw_015112.pdf—and so are likely to assert similar facts to support their

claims for breach of contract or implied contract. *See In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, __ F. Supp. 2d __, 2006 WL 397855, at *1 (J.P.M.L. Feb. 13, 2006) (centralizing duplicative litigation in which "[a]ll five putative nationwide class actions ar[i]se out of allegations" of "deceptive marketing" by failing to disclose the same underlying fact, *i.e.*, that a video game contained hidden sexually explicit content); *AOL Time Warner*, 235 F. Supp. 2d at 1381 (consolidating where "all actions [could] be expected to focus on a significant number of common events, defendants, and/or witnesses"). The Crabbe and Hester complaints, for instance, illustrate this overlap, as each alleges that a contract arose through the process of registering for the exam. *See* Crabbe Compl. ¶¶ 30–31; Hester Compl. ¶¶ 39–40.

Third, the existence of "questions of law or fact common to the class" is a prerequisite to class certification. Fed. R. Civ. P. 23(a). Accordingly, all of the plaintiffs assert that common questions of fact exist across the entire putative class to which they all claim to belong. *See* Plunkett Compl. ¶ 9 ("There are questions of law and fact common to each class member and Defendant which predominate over any questions affecting only individual class members or the Defendant."); Crabbe Compl. ¶ 27(b); Lowe Compl. ¶ 12; Cutler Compl. ¶ 27(b); Hester Compl. ¶ 33; Wallin Compl. ¶ 22.

That the different plaintiffs' legal theories do not completely overlap does not prevent consolidation of the cases. As this Panel has explained, "[t]he presence of differing legal theories in some of the actions does not negate the existence of common questions of fact." *In re Cont'l Grain Co., Inc.*, 482 F. Supp. 330, 332 (J.P.M.L. 1979) (concluding that centralization was necessary); *see also In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, 408 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005); *In re Gen. Motors Class E Stock Buyout Secs. Litig.*, 696 F. Supp. 1546, 1546–47 (J.P.M.L. 1988). Nor does the fact that one of the plaintiffs named

EDS as a co-defendant negate the essential factual identity of these six cases. *See Zyprexa*, 314 F. Supp. 2d at 1381 (noting that the presence of an additional defendant is not significant when the claims and factual allegations focus on the same underlying issue); *see also In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, 408 F. Supp. 2d 1349, 1350 (J.P.M.L. 2005).

### B. Consolidating the Actions Would Promote Convenience and the Just and Efficient Conduct of the Litigation.

Because these cases share common questions of fact, consolidating them will serve the "convenience of the parties and witnesses and promote the just and efficient conduct of" this litigation. 28 U.S.C. § 1407(a); *see, e.g.*, *In re Am. Family Mutual Ins. Co. Overtime Pay Litig.*, __ F. Supp. 2d __, 2006 WL 397849, at *1 (J.P.M.L. Feb. 13, 2006); *Grand Theft Auto*, 2006 WL 397855, at *1. Consolidating this litigation would eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with regard to questions of class certification), and would conserve the resources of the parties, their counsel, and the judiciary. *See, e.g.*, *Am. Family*, 2006 WL 397849, at *1; *In re Hypodermic Prods. Antitrust Litig.*, 408 F. Supp. 2d 1356, 1357 (J.P.M.L. 2005); *UnumProvident*, 280 F. Supp. 2d at 1379; *Nortel*, 269 F. Supp. 2d at 1368; *AOL Time Warner*, 235 F. Supp. 2d at 1381; *Merrill Lynch*, 223 F. Supp. 2d at 1389. As the complaints indicate, each of the plaintiffs relies on the same software error, meaning that each would demand similar information during discovery if the actions proceed separately. Furthermore, no discovery has yet occurred in any of the actions, so consolidation and transfer would promote efficiency. *Compare In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651 (J.P.M.L. 1981) (transferring where "little to no discovery" had occurred in most of the actions), *with In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980) (denying transfer when two actions had been pending for over three years and discovery concerning the common factual questions was "well advanced").

For these reasons, NASD agrees with plaintiffs Crabbe and Cutler that consolidation is appropriate. Pls. Crabbe & Cutler's Mot. to Transfer and Consolidate 2. This broad agreement is itself a reason supporting consolidation and transfer. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, 374 F. Supp. 2d 1353, 1354 (J.P.M.L. 2005) (consolidating when the common defendant and responding plaintiffs all supported centralization); *In re COBRA Tax Shelters Litig.*, 408 F. Supp. 2d 1348 (J.P.M.L. 2005) (granting the common defendant's request for consolidation despite the plaintiffs' opposition); *see also In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005) (consolidating and transferring to district supported by all responding defendants, one of two plaintiffs, and plaintiffs in potential tag-along actions in that district); *In re Vitamin C Antitrust Litig.*, __ F. Supp. 2d __, 2006 WL 461030, at *1 (J.P.M.L. Feb. 14, 2006) (consolidating in the district that all defendants and some plaintiffs supported).

Moreover, the fact that the plaintiffs all claim to represent the same nationwide class weighs heavily in favor of consolidation and transfer (and outweighs opposition from any outlier among the putative class representatives). This Panel has "consistently held" that "the existence of and the need to eliminate" even the "*possibility* of inconsistent class determinations" under Rule 23 presents a "highly persuasive"—indeed, "crucial"—reason favoring transfer of overlapping classes for consolidated pretrial management. *In re Roadway Express, Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) (emphasis added); *see also Am. Family*, 2006 WL 397849, at *1 (emphasizing the need to "prevent inconsistent pretrial rulings, particularly with respect to class certification"); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 492–93 (J.P.M.L. 1968) (explaining that § 1407 was designed to prevent "pretrial chaos" resulting from "conflicting class action determinations").

9

**C.     The Most Convenient Forum for This Litigation Is the Southern District of New York.**

Because of the securities industry's concentration in New York, *see, e.g., Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 326 (1977) (quoting the state legislature's description of New York City as "the financial center of the world" because of its securities industry and stock exchanges), the Southern District of New York would be the most convenient transferee forum for the parties and potential witnesses in this litigation.  Of the six named plaintiffs, at least two took the test in Manhattan and reside in New York.  *See* Crabbe Compl. ¶¶ 13, 23; Cutler Compl. ¶¶ 13, 23.  This high proportion is likely to exist throughout the proposed nationwide class, given the large concentration of individuals working in the securities industry in the New York metropolitan area.  Because New York City will likely be the geographic focal point of the potential class, it will also likely be the most geographically convenient location for many parties and witnesses.  *See In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366, 1368 (J.P.M.L. 2003) (taking into account "the range of locations of parties and witnesses in this docket and the geographic dispersal of current and anticipated constituent actions").  The appropriateness of transfer to the Southern District is further demonstrated by the fact that three of the six plaintiffs—Crabbe, Cutler, and Hester—chose to file there, and two have expressly sought consolidation in that district.  *See, e.g.*, *Cuisinart*, 506 F. Supp. at 655 (transferring to district with three of eight actions pending); *Grand Theft Auto*, 2006 WL 397855, at *1 (transferring to district with four of five actions pending); *UnumProvident*, 280 F. Supp. 2d at 1380 (transferring to district with 13 of 22 actions pending).

Moreover, because New York City is the center of the investment banking and securities industries, most major investment banks and securities dealers have offices in the Southern District.  Accordingly, witnesses testifying about the circumstances of the plaintiffs' alleged

terminations and about the firms' policies (if any) respecting employees who fail the Series 7

exam are likely to be found there.  Indeed, five of the firms for which the named plaintiffs claim

to have worked have a major office—or headquarters—in or near Manhattan.  Both Lehman

Bros. and Merrill Lynch, the employers identified by Crabbe and Hester, respectively, have their

global headquarters in New York City.  *See* Lehman Bros., Worldwide Offices,

http://www.lehman.com/who/offices/ (last visited Mar. 13, 2006); Merrill Lynch, Contact Us,

http://www.ml.com/index.asp?id=7695_8143 (last visited Mar. 13, 2006); Crabbe Compl. ¶¶ 13,

23; Hester Compl. ¶¶ 22, 27.  UBS Financial Services, for whom Plunkett and Lowe state that

they worked, has one of its main U.S. offices in New York.  *See* UBS, Locations,

http://www.ubs.com/1/e/about/locations.html (last visited Mar. 13, 2006); Plunkett Compl. ¶¶

14, 18; Lowe Compl. ¶¶ 28, 30.  And Ryan Beck & Co., which Cutler identifies as her former

employer, has its headquarters in Florham Park, New Jersey, not far from New York City.  *See*

Ryan Beck & Co., About Ryan Beck & Our History, http://rbcoweb.ryanbeck.com/rbeck

/about/home_about.asp (last visited Mar. 13, 2006); Cutler Compl. ¶¶ 13, 23.

        The Southern District is also convenient for the primary defendant.  NASD, the sole

defendant in five of the six actions, has an office in New York, as does its counsel.

        Moreover, the Southern District of New York has both the resources and the experience

to handle complex litigation related to the securities industry.  Given the prevalence of lawsuits

in New York that relate to securities, the Southern District is uniquely familiar with the securities

industry, and specifically with federally supervised self-regulatory organizations, such as NASD

and the New York Stock Exchange.  *See, e.g.*, *Scher v. NASD*, 386 F. Supp. 2d 402, 406

(S.D.N.Y. 2005); *In re NYSE Specialists Securities Litigation*, 405 F. Supp. 2d 281 (S.D.N.Y.

2005); *Dexter v. Depository Trust & Clearing Corp.*, 406 F. Supp. 2d 260, 262 (S.D.N.Y. 2005);

*DL Capital Group LLC v. Nasdaq Stock Market Inc.*, No. 03 Civ. 9730 (CSH), 2004 WL 993109 (S.D.N.Y. May 5, 2004), *aff'd*, 409 F.3d 93 (2d Cir. 2005); *Desiderio v. NASD*, 2 F. Supp. 2d 516, 519 (S.D.N.Y. 1998); *Hayden v. New York Stock Exchange, Inc.*, 4 F. Supp. 2d 335, 340 (S.D.N.Y. 1998). Statistics suggest that the Panel recognizes this very point: the Southern District currently has 37 multidistrict litigations (MDLs) pending, of which 19 involve securities law. *See* Judicial Panel on Multidistrict Litigation, Distribution of Pending MDL Dockets 6–7, *available at* http://www.jpml.uscourts.gov/Pending_MDLs/PendingMDL-January-06.pdf. Indeed, Judge Deborah A. Batts, before whom the Crabbe and Cutler complaints are currently pending, is currently handling MDL-1714, *In re Rhodia S.A. Securities Litigation*. *Id.*

What is more, the Southern District also enjoys expertise with New York law, which may govern the state-law claims of at least a large segment of the putative class, that is, candidates who live and work in New York and who registered for and took the exam there.

While the Panel sometimes considers where the first action was filed in determining where to transfer, *see, e.g.*, *Nortel*, 269 F. Supp. 2d at 1369 (transferring to court where the action had been pending for a year and a half and which therefore had developed familiarity with the issues), this consideration is not at all compelling here. The district of the first filing, the Middle District of Tennessee, would be inconvenient for much of the potential class, most of the named plaintiffs, virtually all potential witnesses, and the defendants. The Middle District has acquired no special expertise by virtue of Mr. Plunkett's early filing there; indeed, it has no connection to *any* of the conduct alleged by the named plaintiffs—*including Mr. Plunkett*, who worked and took the test in Georgia and admits that he had no real connection to Tennessee until after all of the relevant conduct had occurred. *See* Plunkett Compl. ¶¶ 15, 28. Tennessee law is

therefore unlikely to govern even Mr. Plunkett's claims under any choice-of-law analysis.[11]

Furthermore, none of the other plaintiffs, their counsel, the defendants, or the defendants'

counsel have offices in Tennessee.

## III.    Conclusion

For the foregoing reasons, transfer of the Series 7 examination litigation against NASD to

a single federal forum would further "the convenience of the parties and witnesses and [would]

promote the just and efficient conduct of [the] actions."  28 U.S.C. § 1407(a).  Therefore, NASD

respectfully requests that this Panel enter an order transferring these actions to the Southern

District of New York for coordinated pretrial proceedings.

---

[11]  Similarly, neither of the plaintiffs who filed in the District of Columbia alleges that he
worked there or took the test there.  Mr. Lowe took the test in California, and Mr. Wallin is
from Illinois and worked for a firm that has no offices in the D.C. area.  Lowe Compl. ¶ 7;
Wallin Compl. ¶ 3; *see* GCG Financial, Inc., http://www.gcgonline.com/location.cfm (last
visited Mar. 13, 2006).

Dated:  March 13, 2006                    Respectfully submitted,


                                          _____

OF COUNSEL:                               F. Joseph Warin
John J. Flood                             William M. Jay
NATIONAL ASSOCIATION OF                   GIBSON, DUNN & CRUTCHER, LLP
SECURITIES DEALERS, INC.                  1050 Connecticut Avenue, N.W.
1735 K Street, N.W.                       Washington, D.C.  20036
Washington, D.C.  20036                   Telephone: (202) 955-8500
                                          Fax: (202) 467-0539

                                          *Attorneys for Defendant*
                                          *National Association of*
                                          *Securities Dealers, Inc.*

**FILED**

MAR – 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY WALLIN, 912 Roanoke Drive, Springfield, IL 62702, On behalf of Himself and All Others Similarly Situated, | ) ) ) ) | Civil No. |
| Plaintiff, | ) ) | DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| NATIONAL ASSOCIATION OF SECURITIES DEALERS, 1735 K Street NW, Washington, DC 20006 | ) ) ) | |
| Defendants. | ) ) ) | |

DEMAND FOR JURY TRIAL

JURY ACTION

CASE NUMBER 1:06CV00382

JUDGE: Emmet G. Sullivan

DECK TYPE: Contract

DATE STAMP: 03/03/2006

**CLASS ACTION COMPLAINT**

1

**PETITION FOR DAMAGES**

Plaintiff, by and through his attorneys, brings this action on behalf of himself and all others similarly situated, and hereby alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this matter is a class action in which one or more of the class members are citizens of a state different from Defendant.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Defendant National Association of Securities Dealers (the "NASD") resides and is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in and were directed from this District.

**PARTIES**

3.      Plaintiff, Timothy Wallin, a person of full age and majority, is a resident of Illinois and took the Series 7 exam administered by the NASD on November 22, 2004. Plaintiff brings this action on behalf of himself and a Class of similarly situated persons throughout the United States.

4.      Defendant the NASD is a private-sector, not-for-profit regulator of America's securities industry headquartered in Washington D.C. It oversees the activities of more than 5,100 brokerage firms, 106,850 branch offices and more than 655,830 registered securities representatives. Under federal law, virtually every securities firm conducing business with the United States public is a member of the NASD. The NASD licenses individuals and admits firms to the industry, writes rules to govern the behavior of individuals and firms, and examines them for regulatory compliance, while disciplining those who fail to comply. In addition, the NASD provides education and qualification examinations, including the Series 7 examination, to industry professionals.

- 1 -

## FACTUAL ALLEGATIONS

5.    Any person associated with a securities firm that is a member of the NASD, who is engaged in the securities business of the firm – including partners, officers, directors, branch managers, department supervisors, and salespersons – must register with the NASD. In order to do business with the public and as part of the registration process, securities professionals must pass an examination (the "Series 7 Exam") developed by the New York Stock Exchange ("NYSE") and administered by the NASD to demonstrate competence in the areas in which they will work. This mandatory qualification examination covers a broad range of subjects on the markets, as well as the securities industry and its regulatory structure, ensuring a minimum level of understanding and expertise.

6.    The Series 7 Exam qualifies a candidate for the solicitation, purchase, and/or sale of all securities products, including corporate securities, municipal securities, options, direct participation programs, investment company products and variable contracts. The Series 7 Exam contains 250 multiple-choice questions and is administered in two three-hour parts of 125 questions each. The passing score for the Series 7 Exam is 70 percent.

7.    Between October 1, 2004 and December 20, 2005, approximately 60,500 individuals, including Plaintiff, took the Series 7 Exam. The results of this Series 7 Exam – whether pass or fail – were forwarded to member securities firms and the Central Registration Depository ("CRD") registered representative database.

8.    According to the NASD, a recently discovered software error in the grading mechanism for the Series 7 Exam caused 1,882 individuals who took the Series 7 Exam between October 1, 2004 and December 20, 2005, to incorrectly receive a failing score. These individuals should have received a passing score.

- 2 -

9.     The grading error related to 213 questions that were introduced to the pool of possible questions beginning in October 2004. Because of the unique qualities of the Series 7 Exam, a computer model is used to account for the differences in test difficulty and to weigh questions appropriately. The error occurred in the weighing process in exams including one or more of these 213 questions.

10.     The error was caused when the NASD's agent, EDS, which developed the software used to appropriately weigh the questions, entered a coding error into the software, resulting in improper scoring. This coding error was discovered in October 2005, and led to an investigation by the NASD to find the individuals who were affected.

11.     On or about January 6, 2006, the NASD issued a press release stating that of the 1,882 individuals receiving an incorrect failing score, roughly 1,000 have already re-taken the Series 7 Exam and passed; more than 600 have not yet rescheduled a Series 7 Exam date; and just over 200 individuals are scheduled to re-take the Series 7 Exam.

12.     In the January 6, 2006 press release, Robert R. Glauber, Chairman and Chief Executive Officer of the NASD apologized for the "problems this caused for the individuals and firms affected." Glauber also stated that the NASD was "putting in place enhanced quality control measures designed to prevent a future reoccurrence."

13.     Upon information and belief, in late January 2006, the NASD also notified 1,882 individuals, including Plaintiff, that they had incorrectly received a failing score on the Series 7 Exam. The NASD also informed firms who sponsored the affected examinees of the error.

14.     On January 23, 2006, Plaintiff Timothy Wallin, received a form letter from the NASD informing him that the "NASD has determined that a software error introduced into the automated scoring mechanism for the Series 7 exam affected a limited subset of individuals who sat for the

- 3 -

exam between October 2004 and December 2005 . . . . Your examination result was among those affected, and you should have received a passing score."

15.    In the form letter to the affected Class Members, the NASD only offered to reimburse the affected individuals for the cost of re-testing, including outside training courses and materials, and for travel expenses directly related to the re-taking examination. The letter reads, in pertinent part:

> We understand that you may have incurred certain out-of-pocket expenses as a result of the software grading error. We will defray expenses that you directly incurred in re-taking the Series 7 examination. Specifically, we will reimburse you for the demonstratable costs or re-testing, including outside training courses and materials, and for travel expenses directly related to re-taking the examination. If you would like to request reimbursement, please go to our website and submit the expense reimbursement for to NASD with copies of your receipts, processed checks, or credit card statements.

16.    Plaintiff Timothy Wallin was administered the Series 7 Exam on November 22, 2004, and was notified that day of his failing score.

17.    As a result of receiving a failing score, Plaintiff suffered humiliation, embarrassment and financial loss. He was forced to take two weeks of vacation time from his employment at GCG Financial to study and re-take the Series 7 Exam. He was again administered the Series 7 Exam on December 29, 2004, and was informed that day of his passing score.

18.    Other examinees have been similarly impacted by the software error. The Dow Jones Newswires reported that the mistake may have been costly to some individuals "since they can't book fees and commissions from customers without a Series 7 license. Many securities firms fire employees in training programs who fail the exam." The Bloomberg News similarly reported and added that the NASD may face lawsuits from people who lost their jobs or were denied promotions because they failed the Series 7 Exam.

19.    Other than the limited expenses listed hereinabove, the NASD is not offering to compensate the affected class members for their damages, including emotional distress,

- 4 -

inconvenience and monetary losses, such as loss of employment, wages and/or loss of employment potential due to the incorrect Series 7 Exam results.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this class action individually and on behalf of all members of the following class (the "Class") pursuant to Federal Rules of Civil Procedure Rule 23:

> All persons who took the Series 7 examination administered by NASD during the period between October 1, 2004 to December 20, 2005, who received a failing score due to a scoring error.

21.    The Class is numerous and joinder of all members is impracticable.  The NASD acknowledges that 1,882 persons passed the test, but were falsely told that they had failed, making this a class action with 1,882 potential Class members.  The identities of the members of the Class are currently unknown to Plaintiff, but are known to the NASD and can be easily ascertained.

22.    There are questions of law and fact common to the Class.  The most significant questions common to the Class, which predominate over all other issues present in this case, are:

(a)    Whether the NASD provided Plaintiff and Class members with erroneous failing test scores;

(b)    Whether the NASD incorrectly reported Plaintiff's and Class members' scores to securities firms and the CRD registered representative database;

(c)    What was the nature and extent of the NASD's scoring error and reporting of erroneous information in the Series 7 Exam;

(d)    What audit procedures were in place to detect incorrect scoring;

(e)    Why the auditing procedures failed to timely detect the incorrect scoring prior to reporting;

(f)    Whether the NASD breached contracts with Plaintiff and Class members;

(g)    Whether the contract between the NASD and Plaintiff and Class members is a contract of adhesion;

- 5 -

(h)     Whether the NASD informed Plaintiff and Class members of the scoring error in a timely fashion;

(i)     What measures the NASD undertook to determine and identify all those whose scores were impacted by the scoring error;

(j)     Whether the NASD has identified all putative Class members;

(k)     Whether the steps taken to remedy the scoring error were appropriate and thorough; and

(l)     Whether the NASD is legally liable for damages to Plaintiff and Class members.

23.     The questions of law and fact common to the Class predominate over any questions that may affect only individual members.

24.     The claims of Plaintiff are typical of the claims of all other Class members because Plaintiff took the Series 7 Exam, was falsely told that he failed the exam when in actuality he had passed it, and was injured by Defendants' conduct. Thus, Plaintiff's claims are based upon the same set of facts, and assert the same legal theories to recover damages.

25.     Plaintiff will fairly and adequately protect the interests of the Class. There are no disabling conflicts of interest between Plaintiff and the Class. Plaintiff is a member of the Class, possesses the same interests, and suffered the same injuries as the Class members, making his interests coextensive with those of all other Class members.

26.     Plaintiff has retained competent counsel who is experienced in complex federal and state class action claims such as those asserted in this case. Plaintiff intends to prosecute this action vigorously for the benefit of the Class and the interests of the Class will be fairly and adequately protected by Plaintiff and counsel.

- 6 -

27.     A class action is superior to other methods for fair and efficient adjudication of the controversy for reasons that include the following:

(a)     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent and varying adjudications with respect to members of the Class that would establish incompatible standards of conduct for Defendant;

(b)     Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and prosecution as a class action will eliminate the possibility of duplicative litigation; and

(c)     A class action will provide redress for claims which otherwise may be too small to support the expense of individual, complex litigation.

28.     Plaintiffs know of no difficulties that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### Breach of Contract

29.     The foregoing paragraphs are incorporated as if fully set forth herein.

30.     By submitting applications and fees to the NASD in connection with taking the Series 7 Exam, Plaintiff and Class members entered into contracts with the NASD.

31.     The contracts contained express or implied provisions that the NASD would provide test takers, securities firms and the CRD registered representative database with their correct scores.

32.     The NASD breached its contract when it incorrectly reported failing scores for 1,882 individuals who were administered the Series 7 Exam between October 1, 2004, and December 20, 2005.

33.     As a result of the NASD's breach, Plaintiff and Class members suffered damages as described herein.

- 7 -

34.    The damages suffered by Plaintiff and Class members were the natural and foreseeable consequences of the NASD's conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment in favor of Plaintiff and all other Class members and against Defendant the NASD, and award the following relief:

(a)    An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

(b)    Actual damages for injuries suffered by Plaintiff and the Class;

(c)    Award prejudgment and post-judgment interest on all damages as allowed by law;

(d)    Award attorneys' fees, expert fees and all costs and expenses incurred in the prosecution of this action as allowed by law; and

(e)    Grant such additional or different relief as the interests of justice, law or equity may require.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury.

DATED: March 3, 2006

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
NANCY M. JUDA (D.C. BAR NO. 445487)

_____
NANCY M. JUDA

1100 Connecticut Avenue, N.W.
Suite 730
Washington, DD 20036
Telephone:  202/822-6762
202/828-8428 (fax)

- 8 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ROBERT M. ROTHMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

KAHN GAUTHIER SWICK, LLC
LEWIS S. KAHN
MICHAEL SWICK
ERIC J. O'BELL, OF COUNSEL
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: 504/455-1400
504/455-1498 (fax)

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ANDREW CRABBE, on behalf of himself
and all others similarly situated,

               Plaintiff,

                                06 Civ. 1085 (DAB)
                                06 Civ. 1208 (DAB)
         -against-             06 Civ. 1238 (DAB)
                                  ORDER

NATIONAL ASSOCIATION OF SECURITIES
DEALERS, INC.,

               Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    The Court is in receipt of Defendant's unopposed motion to
stay the proceedings in the above-captioned case, and those cases
related to it, pending a transfer decision by the Judicial Panel
on Multidistrict Litigation, which has been sought by the
Plaintiff.  For the reasons cited in Defendant's accompanying
memorandum of law, Defendant's unopposed motion to stay these
proceedings is GRANTED.


    SO ORDERED.

Dated:    New York, New York
             *March 9*  , 2006

                                       Deborah A. Batts
                               United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/10/06